TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ELIA HERRERA (Cal. Bar No. 293278)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2024
    Facsimile: (213) 894-0141
    Email:    elia.herrera@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00422-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT CESAR ISAIS |
| v. | Hearing Date: March 7, 2022 |
| CESAR ISAIS, | Location:    Courtroom of the Hon. John F. Walter |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Elia Herrera, hereby files its Sentencing Position for defendant Cesar Isais.

    This Sentencing Position is based upon the attached Memorandum of Points and Authorities, the Presentence Investigation Report and Recommendation Letter, the files and records in this case, and such further evidence and argument as the Court may permit.  The

//
//

government respectfully requests the opportunity to supplement its
position or otherwise respond to defendant as may become necessary.

Dated: February 21, 2022        Respectfully submitted,

                                TRACY L. WILKISON
                                United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                      /s/ Elia Herrera
                                ELIA HERRERA
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

On December 1, 2021, defendant Cesar Isais ("defendant") pleaded guilty, pursuant to a plea agreement, to distributing at least 50 grams of methamphetamine.  (Dkts. 40, 42.)  The United States Probation Office ("Probation") disclosed its Presentence Investigation Report ("PSR") (Dkt. 44) and its Recommendation Letter (Dkt. 43) on February 1, 2022.  In the PSR, Probation calculated a total offense level of 29 and a Criminal History Category of I, for a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 87 to 108 months' imprisonment.  (PSR ¶¶ 37, 42, 84.)  While Probation recognized that defendant faces a mandatory-minimum sentence of 120 months' imprisonment for distributing over 50 grams of methamphetamine, because it concluded that defendant qualifies for safety-valve, the mandatory minimum does not apply.  (PSR ¶ 84.)  Probation identified no factors that would warrant a downward departure or variance from the Guidelines range and recommended a sentence of 87 months' imprisonment and three years of supervised release.  (PSR ¶ 100; Dkt. 43 at 1.)

The government agrees with Probation's calculations and recommendation, and respectfully requests that the Court sentence defendant to a low-end Guidelines sentence of 87 months' imprisonment, three years' supervised release, a $100 special assessment, and no fine.

## II.  FACUAL BACKGROUND

Defendant distributed approximately 343.98 grams of actual methamphetamine in February 2020.  (Dkt. 20 ¶ 13.)  A few days before February 11, defendant agreed to sell a machine-gun (for

$6,000) and one pound of methamphetamine (for $2,000) to a person he believed to be a firearms and drug customer, but who was, in fact, a confidential informant ("CI") working with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). On February 11 defendant met the CI and an ATF Undercover Agent ("UC") at a parking lot. (Id.) There, defendant greeted the UC, walked to the back of defendant's car, opened the trunk and showed the UC the machine-gun (which was unloaded) that was in a rifle case. (Id.) The UC took the machine-gun to the UC's car. (Id.) Defendant then reached into the front passenger seat of defendant's car and grabbed a bag with methamphetamine that he gave to the UC. (Id.) The UC paid defendant $8,000 for the firearm and the methamphetamine. (Id.)

Additionally, as defendant stipulated to in the plea agreement between the parties, he had previously sold the CI firearms on three separate occasions in January 2020, all for profit and without a license as a firearms dealer: two short-barreled rifles without a serial number on January 15, two machine-gun pistols on January 22; and a rifle on January 30. (Id.)

On September 22, 2020, the government indicted defendant for engaging in the business of dealing in firearms without a license (Count One), possession of machineguns (Count Two), and distribution of methamphetamine (Count Three). (Dkt. 5.) On December 1, 2021, pursuant to a plea agreement, defendant pleaded guilty to the distribution charge. (Dkts. 40, 42.)

**III. THE PRESENTENCE INVESTIGATION REPORT**

Based on the above, Probation calculated defendant's total offense level as 29, as follows:

2

| | | |
|---|---|---|
| Base Offense Level [Between 150 and 500 Grams of Methamphetamine (Actual)]: | 32 | U.S.S.G. § 2D1.1(c)(4) |
| Possession of dangerous weapon | +2 | U.S.S.G. § 2D1.1(b)(1) |
| Safety Valve | -2 | U.S.S.G. § 2D1.1(b)(18_ |
| Timely Acceptance of Responsibility: | -3 | U.S.S.G. §§ 3E1.1(a),(b) |

(PSR ¶¶ 22-37.)  As to criminal history, Probation calculated zero criminal history points, placing defendant in Criminal History Category I, with a Guidelines range of 87 to 108 months.  (Id. ¶¶ 39-45, 84-85.)

**IV.  THE GOVERNMENT'S RECOMMENDED SENTENCE**

The government agrees with Probation's calculations and sentencing recommendation.  That is, the government respectfully recommends a sentence at the low-end of the applicable Guidelines range: 87 months' imprisonment, a three-year term of supervised release, and a $100 special assessment fee.  The government believes that such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

**A.  Defendant Qualifies for Safety Valve and a Two-Level Enhancement for Having a Dangerous Weapon**

The government agrees with Probation that defendant is safety-valve eligible, and the mandatory minimum no longer applies.  However, as set forth in the plea agreement, the parties agree that a two-level enhancement is appropriate under U.S.S.G. § 2D1.1(b)(11) due to defendant's possession of a dangerous weapon in the commission of the charged offense—here, distributing methamphetamine.  (Dkt. 40 ¶ 15.)  While both the safety valve provision and the dangerous weapon enhancement share similar language, they have different

3

burdens of proof.  (Id.)  To avoid the dangerous weapon enhancement, a defendant must prove that it was, "'clearly improbable' that he possessed a firearm in connection with the offense."  United States v. Ferryman, 444 F.3d 1183, 1186 (9th Cir. 2006).  To qualify for safety valve, on the other hand, a defendant must prove, "by a preponderance of the evidence, that he did not possess a firearm in connection with the offense."  Id.  Here, the parties agree that under the facts of this case, where defendant had an unloaded firearm in the trunk of his car and a bag of methamphetamine in the front passenger seat, the dangerous weapon enhancement is appropriate, but does not bar him from being safety valve eligible.  (Dkt. 40 ¶ 15.) Therefore, the government agrees with Probation and with the defense that the total offense level is 29, which yields a Guidelines range of 87 to 108 months' imprisonment.

**B.   Defendant's Variance Request Conflates Sentencing Factors and Inappropriately Minimizes Defendant's Conduct**

In his sentencing memorandum, defendant fails to take full responsibility for his actions and inappropriately requests that the Court ignore his full conduct at sentencing.

First, defendant seeks a variance based on the defense's calculation of the "gravamen" of his actions, because he argues that there was an "element of 'sentencing entrapment'" when defendant sold the CI and UC almost 344 grams of methamphetamine after selling the CI firearms on three previous occasions.  (Dkt. 45 at 4.)  Defendant fails to take full responsibility for his actions.  Defendant seeks to attribute blame to the government for being "in control" of the quantity of drugs that defendant sold to the CI and UC.  (Id. at 4.) However, it was defendant who agreed to, and then sold, drugs to the

1    UC in exchange for $2,000.  (Dkt. 40 ¶ 13.)  Further, defendant

2    demonstrated no reluctance to distribute the drugs, or to the

3    quantity of drugs sold, and had no difficulty obtaining a large

4    amount of methamphetamine.  See Ninth Circuit Jury Instruction No.

5    6.2 (Entrapment), 6.2A (Sentencing Entrapment) (2010 Ed.).  Further,

6    defendant did not show an adversity to committing crimes, as he had

7    previously sold dangerous, unregistered firearms, that included a

8    sniper rifle, short-barreled rifles, and machine guns, on three

9    different occasions.  Id.

10         Second, defendant seeks a significant variance because of his

11   argument that his conduct was "aberrant."  Defendant's argument rings

12   hollow under the facts of this case.  This was not a case where

13   defendant engaged in a single illegal transaction.  Defendant sold

14   serious and dangerous firearms on three different occasions, before

15   selling a machine gun and dangerous drug, in a large quantity, in

16   February 2020.

17         Last, defendant's argument that he is at a loss for an

18   appropriate sentence in light of defendant's "spotless record"

19   ignores that the Guidelines account for defendant's lack of previous

20   criminal convictions.  Further, as explained below, the government's,

21   and Probation's, low-end recommendation appropriately balances the

22   applicable sentencing factors.

23         **C.   Nature and Circumstances of the Offense**

24         The nature, circumstances, and seriousness of defendant's

25   offense warrant a substantial custodial sentence.  See 18 U.S.C.

26   § 3553(a)(1).  Defendant distributed almost 344 grams of pure

27   methamphetamine, triggering a ten-year mandatory minimum.  The

28   distribution of illegal drugs poses a serious danger to the

community, especially the distribution of methamphetamine, a potent and highly addictive drug.  In addition, defendant sold a machine-gun at the same time that he distributed the methamphetamine. Defendant's distribution of drugs and firearms heighten the dangerousness of the transaction and the Court's sentence should account for that.

**D.   History and Characteristics of Defendant**

In contrast to the seriousness and dangerousness of defendant's actions, however, stand his history and characteristics.  See 18 U.S.C. § 3553(a)(1).  Those mitigating circumstances warrant a sentence at the low end of the Guidelines range.

First, and significantly, defendant will likely be able to reestablish himself in the community after serving his sentence.  As both the PSR and the letters submitted by the defense show, defendant is very close to his family and members of the community.  (PSR ¶¶47-52.)  Defendant completed high school and has attended schooling after to obtain certificates as both an electrician and water technician.  (Id. ¶¶ 64-66.)

Second, defendant struggles with significant medical issues that have impeded his ability to work and live his daily life.  (Id. ¶¶ 56-52, 62.)

Third, notwithstanding his health issues, defendant has a long legitimate work history.  (PSR ¶¶ 67-71.)

Fourth, and finally, by pleading guilty defendant has accepted responsibility for his crimes.  These facts all support a low-end Guidelines sentence.

### E.   Need To Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public

An 87-month sentence will also satisfy defendant's need for punishment and rehabilitation, reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and protect the public.  See 18 U.S.C. § 3553(a)(2).  Here, there is a particularly strong need for the sentence to deter defendant and others from committing future crimes, because defendant conspired to distribute a highly addictive and sometimes fatal drug and posed a real danger to the community.  See 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed must "afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence).  Moreover, as reflected in the parties' plea agreement, defendant also engaged in the sale of firearms, many unregistered, without a license.  (Dkt. 40 ¶ 13.)  These weapons included a sniper rifle, machine guns, and short-barrel rifles—all significantly dangerous weapons that would have been released into the community with no accountability or regulation.  This sentence should deter defendant from future criminal activity and impress upon him the seriousness of his crimes.  Such a sentence is sufficient to deter him in the future, protect the public, and warn others seeking to make quick money by dealing dangerous drugs or firearms.

### F.   Need To Avoid Unwarranted Disparities

An 87-month sentence will also minimize sentencing disparities among similarly situated defendants.  See 18 U.S.C. § 3553(a)(6).  One way of avoiding such disparities is to correctly calculate the Guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly

calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); <u>Gall v. United States</u>, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."). Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect a sentence between 87 and 108 months.  As such, the government's recommended sentence, within that range, avoids an unwarranted disparity with similarly situated defendants.

### G.   Fine

The government agrees with the Probation Office that "any additional money" that defendant has "would be best used to support himself and reestablish himself in the community" and recommends no fine.  (PSR ¶ 81.)

## V.   CONCLUSION

For the foregoing reasons, this Court should sentence defendant to a low-end Guidelines term of 87 months' imprisonment, a three-year term of supervised release, a special assessment of $100, and no fine.